IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.                                                                    Case No. 4:16CR31

MARK ANTHONY LOWE

        Defendant.

**POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS**

COMES NOW the defendant, Mark Anthony Lowe, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the *Sentencing Guidelines and Policy Statements* as well as this Court's Sentencing Procedure Order, and hereby represents that the defendant has reviewed the United States Probation Officer's Presentence Investigation Report, and that he has one unresolved objection to the report. Accordingly, he respectfully states his objection and his position with respect to sentencing factors.

**Procedural Background**

Mr. Lowe was named in a four count Indictment returned by a grand jury in the Eastern District of Virginia, Newport News Division, on March 14, 2016. On April 26, 2016, Mr. Lowe pled guilty, pursuant to a plea agreement, to Counts Three and Four of the Indictment respectively charging him with Coercion and Enticement, in violation of 18 U.S.C. § 2422(b) and Penalties for a Registered Sex Offender, in violation of 18 U.S.C. § 2260A.

A Presentence Investigation Report has been prepared and disclosed to the parties. According to the Presentence Investigation Report, the advisory guideline provisions provide for a mandatory

1

life sentence, plus one hundred twenty months, consecutive.

Sentencing is scheduled for September 7, 2016, at 12:00 p.m.

**Unresolved Objection**

1. Mr. Lowe contends that the advisory sentencing guideline range is not restricted to mandatory life imprisonment pursuant to 18 U.S.C. § 3359(e)(1), for the reasons set forth below.

As detailed above, Mr. Lowe pled guilty to Count Three of the indictment, to wit: Coercion and Enticement, in violation of 18 U.S.C. § 2422(b).

18 U.S.C. § 2422(b) provides "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution *or* any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life. (emphasis added).

Accordingly, in examining 18 U.S.C. § 2422(b), the statute sets forth two different scenarios in which an individual can knowingly persuade, induce, entice, or coerce an individual who has not attained the age of 18 years, to either engage 1. in prostitution *or* 2. any sexual activity for which any person can be charged with a criminal offense. (emphasis added).

**18 U.S.C. § 3559(e): Mandatory Life Imprisonment for Repeated Sex Offenses Against Children:**

Pursuant to 18 U.S.C. § 3359(e)(1), "[a] person who is convicted of a Federal sex offense in which the minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed."

2

18 U.S.C. § 3359(e)(2) sets forth the definitions that correlate to 18 U.S.C.§ 3359(e)(1). Specifically, 18 U.S.C. §3359(e)(2)(A), defines, in relevant part, the term "Federal sex offense" as . . . "an offense under section 2422(b) (relating to coercion and enticement of a minor into prostitution)."

Accordingly, this statute specifically details that in so defining the term "Federal sex offense", as it applies to 18 U.S.C. § 2422(b), the offense relates to coercion and enticement of a minor to engage in prostitution; it does not specifically list the second scenario as set forth in 18 U.S.C. § 2422(b), to engage in *any sexual activity* for which any person can be charged with a criminal offense. (emphasis added).

If the definition as set forth in 18 U.S.C. § 3359(e)(2)(A) were meant to include "to engage in any sexual activity," it is clear that the definition would have included this language in addition to the language already present in that section; "relating to coercion and enticement of a minor into prostitution." 18 U.S.C. § 3359(e)(2)(A). Additionally, it would not have been necessary to include the language, "relating to coercion and enticement of a minor into prostitution", had the intent been to include all of the conduct criminalized in that subsection of the statute.

Thus, because Section 2422(b) distinguishes between "to engage in prostitution" *or* "to engage in any sexual activity", and because Section 3559(e) only imposes a mandatory life sentence for a person convicted of Section 2422(b) relating to coercion and enticement of a minor *to engage in prostitution*, Mr. Lowe contends that Section 3559(e) is not applicable as it relates to Section 2422(b) ("to engage in any sexual activity"). (emphasis added).

Count Three of the Indictment, in relevant part, states that "[o]n or about December 24, 2015 to on or about December 25, 2015, . . . Lowe did knowingly persuade, induce, entice, and coerce

3

an individual who has not attained the age of 18 years - to wit: Jane Doe, . . . to engage in any sexual activity for which any person could be charged with a criminal offense and attempted to do so."

There was absolutely no evidence in the discovery information that was provided by the Government nor anything contained in the Statement of Facts to indicate that Lowe coerced or enticed Jane Doe to engage in prostitution.

In conclusion, because Section 2422(b) relating to "to engage in prostitution" is not applicable here (only Section 2422(b)(relating to "to engage in any sexual activity" is), it is not a qualifying predicate to impose the mandatory life imprisonment sentence under 18 U.S.C. § 3559(e). Therefore, Mr. Lowe respectfully requests that this Honorable Court sustain his objection to the Presentence Investigation Report and find that the advisory sentencing guidelines are not restricted to mandatory life imprisonment pursuant to 18 U.S.C. § 3359(e)(1).

## **The Requested Sentence**

Should this Honorable Court grant Mr. Lowe's objection to the Presentence Investigation Report and find that the advisory sentencing guidelines are not restricted to mandatory life imprisonment, the Total Offense Level will be thirty-nine and Mr. Lowe's Criminal History Category will be a V; resulting in an advisory sentencing guidelines range of three hundred sixty months to life imprisonment. The total statutory mandatory minimum imprisonment for Counts Three and Four is two hundred forty months. Mr. Lowe respectfully requests that this Honorable Court impose a sentence of two hundred forty months in order to comply with the statutory mandate to impose a sentence that is "sufficient by not greater than necessary" to accomplish the goals as set forth in 18 U.S.C. § 3553(a).

## THE APPROPRIATE SENTENCE IN THIS CASE

It is now well understood that the sentencing guidelines are advisory, and district courts are vested with the authority to depart or vary from a suggested range in order to achieve the goal of arriving at a sentence that is "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2): retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment"), deterrence, incapacitation ("to protect the public from further crimes"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." This requirement is not just another factor to be considered along with the others set forth in 18 U.S.C. § 3553(a) — it sets an independent limit on the sentence.

Accordingly, Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing. The Court is to consider (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the guideline range; (d) the need to avoid unwarranted sentencing disparities; and (e) the need for restitution.

I. **Nature and Circumstances of the Offense**

The stipulated Statement of Facts set forth in paragraph five of the Presentence Investigation Report sufficiently details the offense conduct in support of Mr. Lowe's guilty plea. Mr. Lowe timely notified the United States of his intention to plead guilty. Mr. Lowe admitted his guilt, pled guilty, and has accepted responsibility for his criminal behavior. He is remorseful for his criminal conduct

and he acknowledges the destruction that he has caused in the lives of his family, especially his children, his step-children and his grandchildren.

## II. Mr. Lowe's History and Characteristics

Born the only child to his mother and father, Mr. Lowe suffered a traumatizing childhood as a result of the emotionally, verbally and physically disturbing abuse at the hands of his father. Described as controlling, his father's behavior escalated on several occasions to the point where law enforcement intervention was frequently required. Mr. Lowe's mother recalls that while no one was every hospitalized, her husband's control issues "got out of hand." In the Presentence Investigation Report, it is noted that Mr. Lowe's mother recounted that the physical abuse consisted of slapping and shoving. (Presentence Investigation Report ¶ 45).

The Presentence Investigation Report recounts a shocking and disturbing account of Mr. Lowe's memory of being sexually abused while at a daycare facility; a place where children are supposed to cared for and protected in their parents absence. Additionally, the Presentence Investigation Report details information from Mr. Lowe's wife wherein Mr. Lowe disclosed to her his memory of being "sexually assaulted at the age of 15 by a homosexual boy at a sleepover." (Presentence Investigation Report ¶ 45).

### Education:

Mr. Lowe successfully graduated from high school in Texas and attended one semester of college after high school. He subsequently withdrew from college due to the lack of financial means with which to continue, but later attended Technical School where he focused on automotive mechanics classes. In the early 1990s, after attending Junior College in the late 1980s, Mr. Lowe

earned an automotive technician diploma from Capital City Trade and Technical School in Austin, Texas. " (Presentence Investigation Report ¶ 60).

**Employment:**

Mr. Lowe has always enjoyed a steady and consistent employment history with gainful, legitimate, tax-reporting employers. He was a member of the United States Air Force and attained the rank of Staff Sergeant before receiving an honorable discharge. Mr. Lowe primarily trained as a tactical aircraft maintenance technician for seven years and earned the following medals and awards: National Defense Service Medal, Longevity Service Award, Outstanding Unit Award, Noncommissioned Officer Academy Graduate Ribbon and Air Force Good Conduct award. Additionally, Mr. Lowe completed the United States Air Force Reserve Leadership Development Program and served as a reservist for several years. (Presentence Investigation Report ¶ 64).

After his honorable discharge from the United States Air Force, Mr. Lowe worked as an aircraft mechanic at Carswell Air Force base in Fort Worth, Texas, before seeking employment with the General Services Administration. (Presentence Investigation Report ¶ 63).

Mr. Lowe was gainfully employed with the General Services Administration from 1991until his retirement in 2016. ( Presentence Investigation Report ¶ 62).

**Family**:

The Presentence Investigation Report delves deeply into Mr. Lowe's familial background, his marriages and his relationships with his children, all of which can best be described as broken and dysfunctional. Unfortunately and understandably, due to Mr. Lowe's prior criminal convictions for sexually assaulting his then minor step-daughter, Mr. Lowe's relationships with his family

quickly deteriorated and the family has remained shattered and in conflict over the course of many years. (Presentence Investigation Report ¶ ¶ 46-56).

**Character Letters:**

Mr. Lowe's mother and wife have submitted character letters on Mr. Lowe's behalf as well as several of his friends from his church community. (Please see attached Defendant's Exhibits A through F).

In the letter authored by his mother, she describes Mr. Lowe as reliable, helpful, and supportive. (See Defendant's Exhibit A). In the letter authored by his wife, she describes Mr. Lowe as kind, generous, helpful, supportive and remorseful for his criminal actions against his granddaughter. (See Defendant's Exhibit B).

Jim and Carol Walter, his friends of over twenty years, and both of whom are aware of his prior conviction and the details of the instant offense, still show their support for Mr. Lowe and describe him as helpful and a good friend. (See Defendant's Exhibit C).

Mr. Donnell, a friend of more than twenty-five years, describes Mr. Lowe as sincere and generous. His letter is filled with a number of different instances in which Mr. Lowe has volunteered within the church community, working to help the homeless and the poor. (See Defendant's Exhibit D).

In a letter authored by Raymond Ramirez, Jr., he details his relationship with Mr. Lowe and his wife since 1997. Since that time, Mr. Ramirez has witnessed Mr. Lowe's generosity and selfless acts of charity and concern for others. He describes Mark's candidness regarding his prior convictions and the expression of remorse on Mark's behalf for his criminal behavior. In perhaps

the most telling sentence of the letter, Mr. Ramirez describes Mr. Lowe as the man that he knows "is many times the sacrificial giver and selfless benefactor to others." (See Defendant's Exhibit E).

The final letter, authored by Shaun Riddle, describes Mr. Lowe as an "excellent servant/leader." (See Defendant's Exhibit F).

## **Reflecting The Seriousness Of The Offense, Promoting Respect For The Law, Providing Just Punishment, Deterrence & Protecting The Public From Mr. Lowe**

### **Retribution:**

Mr. Lowe is fully aware that this Honorable Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment." 18 U.S.C. 3353(a). With that in mind, Mr. Lowe respectfully submits that a sentence of two hundred forty months achieves these goals as said sentence is punitive in nature, addresses the seriousness of his criminal conduct and in light of Mr. Lowe's age, his acceptance of responsibility, the timeliness of his guilty plea, and saving the family from a lengthy and traumatizing trial, is a just punishment.

### **Deterrence:**

A sentence of two hundred forty months is sufficient to achieve general and specific deterrence. Research indicates that increases in the *severity* of punishment are far less important to producing deterrent effects than the *certainty* of punishment (if severity is relevant at all). *See* Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, 1. Indeed, virtually no empirical data suggests that harsher (more lengthy) sentences achieve better general deterrence than moderate sentences. After reviewing the available evidence on whether harsher sentences deter, Professor Doob asked and answered the following question:

> Can we conclude that variation in the severity of sentences would have differential (general) deterrent effects? Our reply is a resounding no. We could find no conclusive evidence that supports the hypothesis that harsher sentences reduce crime through the mechanism of general deterrence. Particularly given the significant body of literature from which this conclusion is based, the consistency of the findings over time and space, and the multiple measures and methods employed in the research conducted, we would suggest that a stronger conclusion is warranted. More specifically, the null hypothesis that variation in sentence severity does not cause variation in crime rates should be conditionally accepted.

Anthony N. Doob & Cheryl Marie Webster, *Sentence Severity and Crime: Accepting the Null Hypothesis*, 30 Crime & Just. 143, 187 (2003). Indeed, "[t]he findings regarding general deterrence are relatively settled":

> The existing data show that in the absence of the threat of punishment for criminal conduct, the social fabric of society would readily dissipate; crime would escalate and overwhelmingly frustrate the capacity of people to lead happy and fulfilled lives. Thus, general deterrence works in the absolute sense: there is *a connection* between criminal sanctions and criminal conduct. However, there is insufficient evidence to support a direct correlation between higher penalties and a reduction in the crime rate.… It is counter-intuitive to suggest that higher penalties will not reduce the crime rate. However, the evidence is relatively definitive.

Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1202-03 (2014) (footnotes omitted). In sum, "studies repeatedly show that awareness of potentially severe sanctions does not produce less crime." *Id.*, at 1203. So general deterrence "does not require a particularly burdensome penalty, merely one that people would seek to avoid," which "could be satisfied by a fine or a short prison term." *Id.* at 1205.

Accordingly, there is simply no basis upon which to conclude that a sentence of two hundred forty months is not sufficient to achieve general and specific deterrence. Especially in light of Mr. Lowe's age and the age that he will be upon his release from incarceration. Additionally, if he is released from incarceration, there will be significant restraints in place to ensure his full compliance with the terms and conditions of Supervised Release and his requirement to register as a convicted sex offender.

### **Incapacitation:**

Mr. Lowe is also fully aware that the sentence imposed must take into account the need to protect the public from further crimes of Mr. Lowe. He respectfully submits that in light of the significant period of incarceration with which he is facing and his removal from the public for this significant and lengthy period of time, the public shall be protected from any further crimes of Mr. Lowe.

### **Rehabilitation:**

Mr. Lowe fully understands that the need for the sentence imposed must address the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. With that understanding in mind, Mr. Lowe is completely and totally amenable to any and all mental health and sex offender treatment available to him within the Bureau of Prisons. Mr. Lowe is prepared to take full advantage of every rehabilitative opportunity afforded to him while in custody.

### **CONCLUSION**

Giving full consideration to the facts and argument above, Mr. Lowe respectfully requests that this Honorable Court impose a sentence not greater than two hundred forty months. Any

sentence in excess of said sentence would be greater than necessary to achieve the policy purposes of sentencing.

Respectfully submitted:

MARK ANTHONY LOWE

By: _____/s/_____
      Of counsel

Kirsten R. Kmet, Esquire
Assistant Federal Public Defender
Attorney for Mark Anthony Lowe
Virginia State Bar No. 47786
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, Virginia 23510
(757) 457-0850
(757) 457-0880 (telefax)
Email: kirsten_kmet@fd.org

## CERTIFICATE OF SERVICE

I certify that on this 31st day of August 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

Lisa Rae McKeel
Assistant United States Attorney
United States Attorney's Office
721 Lakefront Commons, Suite 300
Newport News, Virginia 23606
Telephone: (757) 591-4000
Email: lisa.mckeel@usdoj.gov

I further certify that I will send a copy of the foregoing via electronic mail to the following non-filing user:

Jason Cole, United States Probation Officer
Senior United States Probation Office
600 Granby Street
Norfolk, Virginia 23510
Email: jason_cole@vaep.uscourts.gov

        _____/s/_____
        Kirsten R. Kmet, Esquire
        Assistant Federal Public Defender
        Attorney for Mark Anthony Lowe
        Virginia State Bar No. 47786
        Office of the Federal Public Defender
        150 Boush Street, Suite 403
        Norfolk, Virginia 23510
        (757) 457-0850
        (757) 457-0880 (telefax)
        Email: kirsten_kmet@fd.org